UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOYCE HARRIS,<br><br>            Plaintiff,<br><br>   v.<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA, et al.,<br><br>            Defendants. | Case No. 19-cv-04594-JSW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 25 |

Now before the Court for consideration is the motion to dismiss filed by Defendant BDO USA, LLP ("BDO"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it concludes the motion is suitable for disposition without oral argument. Civil L.R. 7-1(b). The Court HEREBY GRANTS IN PART AND DENIES IN PART BDO's motion to dismiss but will afford Mrs. Harris leave to amend the complaint.

**BACKGROUND**

Plaintiff Joyce Harris brings this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a), (e)-(g). The complaint alleges the following.

Bruce Harris, the plaintiff's husband, received life insurance coverage through an ERISA plan sponsored by his employer, BDO. (*See* Dkt. No. 1 (Complaint) ¶¶ 2-3.) The plan was offered through Life Insurance Company of North America ("LINA"). (*Id.* ¶ 4.) Both BDO and LINA were ERISA fiduciaries. (*Id.* ¶¶ 3, 7, 28, 30.)

Mr. Harris was diagnosed with cancer and stopped actively working for BDO around July 17, 2015. (*Id.* ¶ 10.) LINA also insured BDO's disability benefits, and it paid Mr. Harris disability benefits until he passed away. (*Id.*) Under the terms of Mr. Harris's life insurance plan,

he received twelve months of continued insurance, meaning Mr. Harris would be covered by life insurance through late July of 2016.  (*Id.* ¶ 11.)  BDO and LINA were aware of the day Mr. Harris left work and that his cancer caused him to leave work and prevented him from returning to work.  (*Id.* ¶ 12.)

On November 25, 2015, LINA and BDO corresponded concerning the "need" to notify Mr. Harris about conversion and portability options under his life insurance plan.  (*Id.* ¶ 16.)  BDO and LINA accepted premiums from Mr. Harris through at least October 17, 2016—several months beyond the termination of his coverage.  (*Id.* ¶ 18.)  This led the Harrises to believe that Mr. Harris was still covered.

In a letter dated October 17, 2016, BDO informed Mr. Harris that his last day of employment with BDO was that day and told Mr. Harris that LINA would contact him with conversion and portability options for his life insurance policy.  (*Id.* ¶ 19.)  The letter, which included information regarding continuation of benefits upon Mr. Harris's termination, also stated that LINA would provide the necessary paperwork.  (*Id.*)  Neither LINA nor BDO followed up with Mr. Harris or provided paperwork regarding conversion and portability options for his life insurance policy.  (*Id.*)

Mr. Harris passed away on February 10, 2017.  (*Id.* ¶ 20.)  In January of 2019, Mrs. Harris made a claim for his life insurance benefits.  (*Id.* ¶ 21.)  LINA denied her claim on January 29, 2019.  (*Id.* ¶ 22.)  Mrs. Harris appealed, and LINA upheld its denial on May 30, 2019.  (*Id.* ¶¶ 23-24.)

Mrs. Harris maintains that BDO breached its fiduciary duties her late husband by: (i) providing incorrect information to the Harrises regarding the continuation of Mr. Harris's life insurance benefits, (ii) misleading the Harrises into believing life insurance benefits were still in effect, (iii) failing to provide Mr. Harris with notice of conversion or portability rights, and (iv) failing to inform LINA that Mr. Harris's coverage under the Plan had ended.  (*Id.* ¶ 32.)  In its motion to dismiss, BDO[1] argues (i) that there is no fiduciary duty under ERISA to provide notice

---

[1] LINA filed an answer to the complaint.  (Dkt. No. 23.)

2

1  of conversion or portability rights and, even if there were such a duty, (ii) Ms. Harris has failed to
2  adequately plead that BDO breached it.  BDO also argues that Ms. Harris does not adequately
3  plead that she is entitled to equitable relief.[2]

4  The Court shall address additional facts as necessary in its analysis.

## ANALYSIS

### A.   Applicable Legal Standards.

BDO moves to dismiss Mrs. Harris's complaint for failure to state a claim.  Under Rule 12(b)(6), the Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), a plaintiff's allegations must constitute more than "labels and conclusions:" "a formulaic recitation of the elements of a claim for relief will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Pursuant to *Twombly*, a plaintiff must allege sufficient facts to state a claim for relief that is "plausible on its face." *Id.* at 570.  A claim is facially plausible where a plaintiff pleads factual content that allows the court to reasonably infer that a defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  In general, if allegations are insufficient to state a claim, a court should grant leave to amend unless amendment would be futile. *See, e.g.*, *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990).

### B.   Discussion.

#### 1.   ERISA Fiduciary Duty.

BDO does not dispute that it is a fiduciary under ERISA.  BDO does contest, however, whether it was obligated, as a fiduciary, to provide conversion and portability information to Mr. Harris and to alert him to the lapse of his coverage.  Accordingly, the Court first analyzes the scope of a fiduciary's duties under ERISA.

ERISA "establish[es] standards of conduct, responsibility, and obligation for fiduciaries of

---

[2] In her reply, Ms. Harris withdrew her request for equitable reformation.  Accordingly, the Court does not address arguments concerning reformation.

United States District Court
Northern District of California

employee benefit plans." 29 U.S.C. § 1001(b). A fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan," acting with the "care, skill, prudence, and diligence . . . that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* § 1104(a). An ERISA fiduciary's duty "requires fiduciaries to deal fairly and honestly with beneficiaries." *Farr v. U.S. W. Commc'ns, Inc.*, 151 F.3d 908, 915 (9th Cir. 1998). In the Ninth Circuit, a fiduciary has an obligation to convey complete, thorough, and accurate information that is material to a beneficiary's circumstance. *Id.* at 914-15.

ERISA is a "comprehensive and reticulated statute." *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 361 (1980). Nonetheless, as the Ninth Circuit observed, ERISA does not purport to "state expressly" each and every one of a fiduciary's duties. *Acosta v. Pac. Enters.*, 950 F.2d 611, 618-19 (9th Cir. 1991), *as amended on reh'g* (9th Cir.1992). Rather, Congress intended "the common law of trusts to define the general scope of [a fiduciary's] authority and responsibility." *Id.* at 618 (alteration in original) (citing *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.,* 472 U.S. 559, 570 (1985) (citing legislative history)). Nonetheless, the scope of an ERISA fiduciary's duties is circumscribed by Congress's goal of ensuring "the soundness and stability of plans with respect to adequate funds to pay promised benefits." *Id.* (citing § 1001).

Generally, an ERISA fiduciary does not have a duty to inform an employee of its conversion or portability rights at the time employment is terminated. *E.g.*, *Echague v. Metro. Life Ins. Co.*, 43 F. Supp. 3d 994, 1016 (N.D. Cal. 2014); *Bryant v. Spectrum Brands, Inc.*, No. 11-cv-1346-LJO-DLB, 2012 WL 2339115, at *7–9 (E.D. Cal. June 19, 2012) (holding no breach of fiduciary duty where employee terminated and no representations made regarding eligibility for portability) (collecting cases); *Pearson v. Nw. Airlines, Inc.*, 659 F. Supp. 2d 1084, 1094 (C.D. Cal. 2006) (holding that ERISA and supporting regulations did not articulate duty to notify former employee of right to apply for benefits). However, a fiduciary or participant can, by their actions,

4

catalyze the broadening of the fiduciary's duty to inform.

For example, when a participant asks a fiduciary a question about his benefits, the fiduciary has a duty to "complete[ly] and accurately" answer the question. *See Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999) (noting that fiduciaries "must give complete and accurate information *in response to participants' questions*," and that providing "materially misleading" information, by statement or omission, breaches this duty (citations omitted and emphasis added)). ERISA fiduciaries cannot avoid their duties based on the technicalities of a participant's questions. *See id.* Further, once a fiduciary has information concerning the participant's circumstances, the fiduciary must disclose "complete and accurate" information material to the participant's circumstances—"even when a beneficiary has not specifically asked for the information." *Farr,* 151 F.3d at 914 (quoting *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir. 1995) (citation omitted)). Finally, a fiduciary may broaden its duty to disclose information when it offers or promises to provide a participant with additional information. *See In re Calpine Corp.*, No. 03-cv-1685-SBA, 2005 WL 1431506, at *7 (N.D. Cal. Mar. 31, 2005) (citing *Bins v. Exxon Co. U.S.A.*, 220 F.3d 1042, 1054 (9th Cir. 2000)).

The complaint sufficiently alleges BDO breached its fiduciary duty. First, though Mr. Harris is not alleged to have made inquiries to BDO or LINA concerning his conversion and portability rights, the complaint alleges that BDO and LINA should have known that Mr. Harris would be concerned about the same. The complaint alleges that BDO (i) was aware of Mr. Harris's illness and its severity, and, (ii) due to his prolonged absence of work and receipt of disability benefits from LINA, knew that Mr. Harris was dying. In multiple circuits, courts have held that a fiduciary's awareness of a beneficiary's particular need triggers additional duties to disclose. *See, e.g.*, *Fed. Ins. Co. v. Am. Home Assur. Co.*, 102 F. Supp. 3d 1354, 1358–59 (N.D. Ga. 2015) (holding fiduciary duty breached where company aware of "specific facts" related to participant's circumstances which made issue of conversion rights significant to him, thus catalyzing duty to inform); *Eddy v. Colonial Life Ins. Co. of Am.*, 919 F.2d 747, 751 (D.C. Cir. 1990) ("[O]nce a beneficiary makes known his predicament, the fiduciary is under a duty to communicate . . . all material facts . . . which the trustee knows or should know."); *Vest v.*

5

*Resolute FP US, Inc.*, 905 F.3d 985, 987-89 (6th Cir. 2018) (holding allegations insufficient to state a claim for breach of fiduciary duty where plaintiff failed to allege that plaintiff requested information about benefits prior to participant's passing *or* that ERISA fiduciary knew of specific facts related to participant's health condition or that he would never return to work). *But see Switzer v. Wal–Mart Stores,* 52 F.3d 1294, 1299 (5th Cir.1995) ("It is only after the plan administrator does receive an inquiry that it has a fiduciary obligation to respond promptly and adequately in a way that is not misleading.").

Here, the complaint alleges BDO was aware that Mr. Harris was severely, even terminally, ill; this awareness, if true, triggered BDO's fiduciary duty to inform. BDO was on notice that Mr. Harris would be interested in continued life insurance coverage. *See Krohn*, 173 F.3d at 549 (holding breach of fiduciary duty where fiduciary failed to provide information about long-term disability benefits despite fiduciary's receiving notice repeatedly that plaintiff would require the same). Drawing all reasonable inferences in favor of the complaint, as the Court must, the Court concludes that the complaint sufficiently alleges that BDO breached its fiduciary duty in failing to provide Mr. Harris with the information to convert and/or port his life insurance policy when BDO knew Mr. Harris would likely want (and need) to continue his coverage.

Second, the complaint alleges that BDO told Mr. Harris in October of 2016 that LINA would contact him concerning conversion and portability of coverage and provide the necessary paperwork. But neither entity followed up with Mr. Harris. Because the complaint alleges BDO made an affirmative representation to Mr. Harris that information and paperwork would be forthcoming, and because the complaint alleges BDO did not follow through on its assurance, the complaint has sufficiently alleged that BDO breached its fiduciary duty. *See Calpine*, 2005 WL 1431506, at *7 (citing *Bins*, 220 F.3d at 1054).

Third, BDO does not contest that it and LINA accepted Mr. Harris's premium payments several months past the termination of his coverage. To accept these premiums after Mr. Harris's coverage had lapsed was a breach of fiduciary duty because it was tantamount to confirming coverage. As alleged in the complaint, the acceptance of premium payments led the Harrises to believe that Mr. Harris's life insurance policy was still in effect. *See McCravy v. Metro. Life Ins.*

6

*Co.*, 690 F.3d 176 (4th Cir. 2012) (examining availability of equitable surcharge remedy for breach of fiduciary duty where fiduciary accepted participant's premium payments even though participant ineligible for coverage).

In many cases where courts have held that a fiduciary's acceptance of life insurance premium payments for coverage of an ineligible participant constituted a breach of fiduciary duty, the participant paid the premiums through the time when the policy would be payable—in other words, through the time of his death. *E.g.*, *Frye v. Metro. Life Ins. Co.*, No. 17-cv-31-DPM, 2018 WL 1569485, at *1-2 (E.D. Ark. March 30, 2018). Only after the putative participant died, in these cases, did the survivor beneficiary discover the decedent was not covered by the policy. The Court notes that, unlike many plaintiffs in such premiums-payment cases, Mr. Harris was not paying premiums up to the time of his passing. However, at least one court in this district has concluded that the cessation of the payment of premiums does not necessarily absolve a fiduciary of his duties. *See Echague*, 43 F. Supp. 3d at 1023 (rejecting argument that participant knew life insurance policy was terminating where premium payments due and not submitted).

Mrs. Harris has sufficiently alleged that BDO breached its fiduciary duties.

**2.      Equitable Relief.**

Section 1132(a)(3) allows for recovery in the form of "appropriate equitable relief" in ERISA cases. As recognized in *CIGNA Corp. v. Amara,* there are at least three types of equitable relief under § 1132(a)(3) that might apply to rectify a breach of fiduciary duties: plan reformation, equitable surcharge, and equitable estoppel. *See* 563 U.S. 421 (2011). Following *Cigna*, "make whole" monetary relief—compensation for a loss resulting from a trustee's breach of duty—is available as a remedy for breaches of fiduciary duties under § 1132(a)(3). *Skinner v. Northrop Grumman Ret. Plan B,* 673 F.3d 1162, 1167 (9th Cir. 2012).

As the Court has explained above, the complaint sufficiently alleges that BDO breached its fiduciary duty. The complaint further alleges that, as a result of these breaches, Mrs. Harris and her husband believed, when he passed away, he was covered by his erstwhile employer's life insurance plan. Mrs. Harris has therefore alleged that she suffered a loss due to BDO's breach of fiduciary duty. *McBean v. United of Omaha Life Ins. Co.*, No. 18-cv-166-MMA-JLB, 2019 WL

1508456, at *9–10 (S.D. Cal. Apr. 5, 2019) (noting plaintiff must allege loss related to breach of fiduciary duty), *appeal dismissed*, No. 19-55496, 2019 WL 5608071 (9th Cir. Oct. 8, 2019). Accordingly, Mrs. Harris has appropriate equitable remedies available to her—including surcharge. *Echague*, 43 F. Supp. 3d at 1022–23 (holding equitable surcharge was appropriate relief where fiduciary led participant to believe she was covered and survivor discovered lapse in coverage upon participant's death). At the motion to dismiss stage, it is too early to determine the proper equitable remedy for Mrs. Harris's claim. *Radevska v. Noble Ams. Energy Sols., LLC*, No. 15-cv-0271-GPC-RBB, 2015 WL 6869345, at *9-10 (S.D. Cal. Nov. 9, 2015). Mrs. Harris need only sufficiently allege one theory of recovery under § 1132(a)(3). This she has done.

## CONCLUSION

For these reasons, the Court GRANTS IN PART AND DENIES IN PART BDO's motion to dismiss. As Mrs. Harris conceded that reformation is not an appropriate equitable remedy under the facts alleged, no later than December 13, 2019, Mrs. Harris shall file an amended complaint that omits reformation. The initial case management conference is HEREBY SET for February 7, 2020, at 11:00 a.m. The parties' joint statement is due January 31, 2020.

**IT IS SO ORDERED.**

Dated: December 11, 2019

_____
JEFFREY S. WHITE
United States District Judge

8